Judge Nicholas
delivered the opinion of tlo court.
ii. Graves convey t-d all his estate^ real and personal, to Eumumí P. finite, m trust, itr sell me same, and wita the proceeds satisfy certain debt» due from Graves to John White, and to indemnify the huter against certain liabilities he hacl incuneu as tne surety 01 Graves. Among othes property so conveyed, there was a tract oí iuud7 wiucn it was stipulated by me deed Graves siiould have the privilege oí selling himself on or before 3 named nay, by private-sale,, provided- the bonds taken ior tne purenase money should be assigned to Edmund P. Wnite, to be held by him for the pur* poses of the trust. At the time of taking this deed, Edmund P. was acting as the agent of John White for tiie purpose of obtaining security and indemnity for Graves. In addition to the stipulations contained on the face of the deed, it was verbally agreed between E. P. White and Graves, that out of the proceeds, of the sale of the land to be effected by the latter, he was to be permitted to retain $1000 of the sale money to be applied to his own use or-for purpo-ses other than those expressed in the deed. Shortly after the date of the deed, the land was sold by Graves and $¡.1000 of the proceeds retained by him with the assent of E. P. White.. At the time of executing the deed, Graves was in failing if not insolvent circumstances, with heavy debts against him then due, some of which were in suit, and on which judgments were obtained recently thereafter.
1 his deed of trust was attacked by appropriate proceedings on beiialf of tne other creditors of H. Graves, and tlie balance oí the property embraced by it having been sold by order of the circuit court, the deed was treated ás Iraudulent and void, and the proceeds applied, by final decree, to the satisfaction of those oilier ciednors, to the prejudice of White, his claims being postponed till theirs were satisfied,.
*524 The decision of the case here depends mainly upon two questions. First. Whether the deed of trust was fraudulent and void as to the other creditors of Graves; and if so, then, secondly, whether White should have been paid, pro rata, with the other creditors, or whether his debts should have been postponed as was done by the cirouit'court.
As to the first of those questions, we' shall only notice one objection out of many that have been made to the validity of the deed. It is the effect of the secret agreement, not expressed on the face of the deed, to permit Graves, the grantor, to retain $1000 of the purchase money for purposes other than those expressed in the deed. Does this of itself render the deed, in contemplation of law, fraudulent and void ?
So far as we know, the exact point has not been adjudged, but it falls so entirely within th&operation of well settled principles,, that there can be but little difficulty in coming to a correct determination of it..
In conceding to a debtor, the right of prcfering one creditor to another, by pledges of, or liens upon, his property, the law has yielded him a power greatly liable to abuse, and which, apart from the necessity of such power in the transaction of business between men in their commercial relations, it would be difficult to defend on mere principles of equity. “ The property of a debtor is that upon which he obtains credit, is that to which his creditors look for payment, and upon which they all have an equally equitable claim for remuneration.” When the chancellor gets hold of the fund, he always makes equal distribution among the whole of the creditors according to the amounts of their respective claims, unless prevented by specific liens, priority obtained by superior diligence or other controlling circumstance. To disturb this equitable order of distribution, is to interfere with the rights of general creditors ; and the law, therefore, whilst it permits it to be done, looks with great jealously upon the maimer of doing it. Whilst it allows the debtor to prefer .a favored creditor, it requires in the mode of' doing it all fairness and good faith. It denounces all departures from either. In its anxie *525 fcy to prevent an abuse of tiiis power, and to preserve these transactions pure, it requires that they should truly speak what they profess to be. That whilst professing merely to confer an allowed'preference on One creditor, they should not covertly secure an advantage to the debtor himself to the prejudice of other creditors. It discountenances all secret trusts and confidences, for procuring to the debtor ease and favor, as against his other creditors. Such is the odium with which it views such secret trusts, that the law has even devised and brought to its aid artificial, arbitrary rules for their ascertainment and detection. Possession retained by the grantor in cases of absolute conveyance of land, is said to lie evidence of fraud, by reason of its being a strong-indication of a secret trust and reservation. Roberts, 555. “ A leading object of the statute against fraudulent conveyances must have been to pretent those collusive transfers of the legal title, which, placing property out of the reach of creditors, leave to the debtor the beneficial enjoyment of that which ought to be left open to their legal remedies.”
Deed of trust by an insolvent debtor, by which he conveys all his estatr, real and personal, to be sold for tho benefit of one ofhis creditors, vith a secret parol agreement between him and the creditor that part ■if the money for which the property mi:»lit sell, should go tho debtor, decided to be fraudulent.
In the case of Riggs vs. Murray, II John. Chy. 576, after a full review of the authorities, it was determined that, a power of revocation reserved hy a debtor in assignment of his property to pay certain creditors, renders the instrument fraudulent and void as to other creditors. It is there said, the necessary inference from such a reservation, is, that the transfer was made to hinder, delay and defraud creditors. There the reservation was on the face of the deed. It spoke truly the . whole arrangement between the parties. Here there is a similar reservation, existing in parol, not expressed in the deed, but in direct repugnance to its provisions. This case is, so far, the stronger of the two against the deed. That there was a secret trust for the benefit of the grantor, contrary to the agreement as expressed in the deed, must always be a controlling circumstance on the question of fraud, if it does not, perse, render the conveyance void.
The effect of the deed in this case, if it had been valid, would be to save the property from immediate sale, under execution, by the other creditors. *526 They would, however, still have a right to the equity ot' redemption, and could have secured the benefit thereof by a levy of their executions. If the secret agreement were permitted to prevail, this right would fie thereby abstracted from them to the amount oi $10<JU. A debtor cannot be permitted thus to withdraw ms property irom ins creditors and appropriate it his own use. A creditor cannot be allowed to gam a preference over other creditors^ in consideration oi such secret trust.
Where a cirediior has endeavored to obtain a fraudulent preference over the other creditors of an insolvent debt- or, bv having procured a conveyance to himself of all the debt- or’* property, and the other creditors have obtained a decree setting it aside as null and void, his claims should be postponed till the other Creditors are satisfied.
As to W hite’s claim to be paid, pari passu, with-the other creditors out oi tiie proceeds oi the property, we think it was properly rejected by the circuit court. After a creditor has endeavored to obtain a fraudulent preference over tne other creditors-of an insolvent ueotor, by a transier oi the whole of the debtor’s property, and those creditors have obtained a decree setting it aside as null and void, we do not think the chancellor ought to hear his claim until the others are first satisfied, it has ever been the policy of Use courts to discourage, as far as in them Jay, these fraudulent shifts and devices, on the part of debtors, to screen any part of their property from the payment of their just debts. To effectuate this wise policy, it is indispensably necessary ter deter any portion of the creditors from aiding and assisting these shifts and devices, by lending to them the cloak of their names and bona Jide demands. Nothing will be better calculated to do this, than declaring such aid and assistance to amount to-a disfranchisement of their right to a full and equal participation in the proceeds of the property so attempted to be secreted- A contrary doctrine would hold out a temptation, with which it would be unwise, and impolitic to tempt the morals of the community. A creditor would be much more likely to assist in these arrangements, where he might gain, but could lose nothing, than where he incurred the hazard of' losing his whole debt.
The fact that this arrangement was made for White, by another, and not himself, cannot better his situation. He must be considered as having adopted and confirmed what his agent did. He certainly never disaffirmed his acts. Though the agent *527 had no authority to make such arrangement, and though White may not have known it until disc losed in the progress of the cause ; yet, since that dis closure, he has persisted in asserting his rights under the deed of trust, and ever since the decree of the circuit court vacating the deed on that very ground, he has again, in this court, reasserted his right by virtue of it, and insisted upon the priority which it gave him over the other creditors. ,
Haggin and Cowan, for plaintiffs : Chinn, for de« ipndants.
In the case of Yoder vs. Standiford, VII Mon. 490, it is true that Yoder was allowed his debts notwithstanding the sale and conveyance, under which he claimed, were declared fraudulent and void. Yet it is plainly intimated, that if the whole court had acted upon that point in the case, the decision would have been different. Judge Owsley, whose opinion produced the result in Yoder’s favor, thought that after the destruction of the sale and conveyance, Yoder had a right to fall back upon his judgments and executions which were untained with fraud, and retain the priority which he held by virtue of a levy under them. Here White has no lien whatever on the property, except by virtue of the deed of trust. Without, therefore, expressing ■any opinion as to what we would think of a case circumstanced like that of Yoder vs. Standiford, we shall content ourselves with saying that this is clearly distinguishable fromJhat, and not to be governed by it.
We feel more confident in the propriety of postponing White’s claim, from -the circumstance that he was the party who first brought this whole subject before the chancellor, by obtaining injunction against most of the other creditors, restraining them from proceeding, on their executions against the slaves and personal estate embraced in the deed of trust, and from the additional fact, that all the other creditors have judgments or decrees against Graves, and that he has none.
The decree must be affirmed, with costs.